IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,958

In the Matter of DAVID S. WHINERY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed July 15, 2022. One-year suspension, stayed pending successful completion of the agreed 18-month probation plan.

*Kathleen Selzler Lippert*, Deputy Disciplinary Administrator, argued the cause, and *Gayle B. Larkin*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*N. Trey Pettlon*, of Law Offices of Pettlon & Ginie, of Olathe, argued the cause and was on the answer to the formal complaint, and *David S. Whinery*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against the respondent, David S. Whinery, of Liberty, Missouri, an attorney admitted to the practice of law in Kansas in 2000.

On October 4, 2021, the Office of the Disciplinary Administrator filed a formal complaint against Whinery alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent filed a timely answer to the formal complaint on October 20, 2021. On February 18, 2022, Whinery and the Disciplinary Administrator entered into a summary submission agreement under Supreme Court Rule 223 (2022 Kan. S. Ct. R. at 277). Under the agreement the parties stipulate and agree that Whinery violated the following Kansas Rules of Professional Conduct:

- KRPC 1.2 (2021 Kan. S. Ct. R. 323) (scope of representation);

- KRPC 1.3 (2021 Kan. S. Ct. R. 325) (diligence);

- KRPC 8.4(d) (2021 Kan. S. Ct. R. 427) (conduct prejudicial to the administration of justice); and

- KRPC 8.4(g) (2021 Kan. S. Ct. R. 427) (conduct that adversely reflects on the lawyer's fitness to practice law).

FACTUAL AND PROCEDURAL BACKGROUND

We quote the relevant portions of the parties' summary submission agreement below.

"4. On February 21, 2020, Disciplinary Administrator's Office received a complaint expressing concern that Respondent had been verbally and possibly physically aggressive with G.O., who was his client and incarcerated at the time. This complaint was docketed and investigated.

"5. On April 3, 2020, Respondent provided a written response and several attachments.

"Background of Client G.O.'s Case

"6. In 2019, Client G.O. was incarcerated on felony charges related to a dispute with his neighbor; Johnson County District Court 19 CR 1810. Client G.O. also had municipal charges pending in Mission, Kansas and Prairie Village, Kansas related to city ordinance violations.

2

"7. On October 14, 2019, Client G.O. signed a Power of Attorney (POA) to R.W., an acquaintance of Client G.O. Client G.O. hoped his acquaintance would help him take care of his property while he was incarcerated. This POA to acquaintance R.W. included the home address for R.W.

"Respondent's Representation of Client G.O.

"8. In November 2019, Client G.O. retained Respondent to represent him in the felony case and on the municipal charges. Respondent is not able to provide the exact date he was retained because he did not document the date in his file.

"9. On November 12, 2019, Respondent exchanged emails with the prosecutor for Client G.O.'s felony criminal case in Johnston [*sic*] County. Respondent notes that he may be taking on the case for Client G.O. and hopes to get the prosecutor's initial assessment of the situation. The prosecutor notes the community is very concerned that Client G.O. is dangerous.

"10. On November 19, 2019, Respondent filed an entry of appearance in Client G.O.'s felony criminal case; Johnson County District Court 19 CR 1810.

"11. Respondent did not have any written fee agreement with Client G.O. Respondent verbalized his hourly billing rate and estimated his legal fees to Client G.O. Respondent knew Client G.O. did not have funds to pay a retainer but he did have a house, furs, or other assets that could pay Respondent's legal fees. However, Respondent did not keep contemporaneous time records that documented his legal services. During the course of the disciplinary investigation, Respondent did create an estimated time record.

"12. On December 2, 2019, after Client G.O. bonded out of jail, Respondent exchanged text messages with G.O. In these text messages, they discussed whether Client G.O. is getting ripped off by R.W. serving as POA. Client G.O. was concerned that R.W. had taken cars, jewelry, furs, and/or watches from his home while he was incarcerated. Client G.O. wanted Respondent to help protect his assets. Additionally,

3

Respondent told Client G.O. that he was sending a person over to get fur coats to use as collateral for his legal fees.

"13. In December 2019, Respondent advised Client G.O. to (1) revoke the POA previously given to acquaintance R.W. and (2) give POA to Respondent so Respondent could protect Client G.O.'s property. Client G.O. followed Respondent's advice.

"14. Client G.O. asked Respondent to revoke the Power of Attorney previously given to acquaintance R.W. At Respondent's direction, Client G.O. revoked, in writing, the Power of Attorney to R.W. Client G.O. crossed out and marked 'Revoked' on the signed Power of Attorney to R.W. and wrote a letter confirming that, all dated December 14, 2019. Client G.O. directed Respondent to convey that the Power of Attorney had been revoked to both acquaintance R.W. and the Mission Police Department.

"15. Based on Respondent's advice, Client G.O. gave Power of Attorney to Respondent so Respondent could protect his property. On December 14, 2019, Client G.O. wrote a handwritten note stating that he gave Respondent durable power of attorney.

"16. On the same date, December 14, 2019, Respondent sent Client G.O. a text that said, 'There's an Office Max in that shopping center on Johnson Drive . . . and we can execute a Limited Power of Attorney so I can protect your assets.'

"17. Between December 16th and 18th, 2019, Respondent exchanged emails with the prosecutor for the felony criminal case in Johnston [*sic*] County. In his emails, Respondent noted that his client was selling his house to raise funds to comply with court requirements, that his client's business partners robbed him blind, and his client is in need of treatment; Respondent asked that the warrant be stayed.

4

"18. Respondent's efforts to notify acquaintance R.W. that the POA from Client G.O. had been revoked included the following:

"a. Respondent called a telephone number for R.W. on one or more occasions to tell him the POA had been revoked; however, these efforts were unsuccessful.

"b. Respondent gave City of Mission law enforcement a copy of the revoked POA for R.W. to help protect Client G.O.'s property.

"c. Respondent did not take other steps to notify R.W. that Client G.O. had revoked the previously granted POA, despite the fact R.W.'s physical address was listed on the documents G.O. had given him.

"19. Respondent made no attempt to serve notice of the revoked POA on acquaintance R.W. at his home address which was listed on the POA document.

"20. A subsequent attorney for Client G.O. successfully served R.W. with notice that the POA from Client G.O. had been revoked. This notice was served on R.W. at his home address, which was listed on the POA document that Respondent had in his possession.

"21. Between December 20th and 23rd, 2019, Respondent exchanged emails with the City of Mission Court Clerk and Mission Police Department. Respondent advised City of Mission officials that Client G.O. revoked the Power of Attorney previously given to R.W.

"22. On or about December 30, 2019, R.W., using the purported POA that Client G.O. had asked Respondent to revoke as part of his representation, signed a quick [*sic*] claim deed for Client G.O.'s home over to another person without the knowledge of Client G.O. Client G.O. had to engage in litigation to resolve title and deed issues to his home.

5

"23. On or about January 9th and 10th, 2020, Respondent helped to facilitate an exclusive real estate listing agreement between Client G.O., who was incarcerated at the time, and a Real Estate Service with E.D. as the 'Listing Agency'. This document has Client G.O.'s signature with a date of January 9, 2020, and the signature of the listing agency dated January 10, 2020.

"24. On January 15, 2020, Client G.O. signed a 'General Durable Power of Attorney' for Respondent. Client G.O. gave Respondent POA to safeguard assets and to help him sell his home so he would have funds to pay his court costs, fines, bond out on his felony case, and pay Respondent's attorney fees.

"25. On February 18, 2020, at 9:36 p.m., Respondent sent an email to the prosecutor and asked if Client G.O. can plead to 'Criminal Threat.' Criminal threat is a lower-level felony charge than the Aggravated Assault that Client G.O. was charged with and is not subject to the special rule of presumptive prison due to the firearm. At the time of this email, Client G.O. did not want to plead to a felony charge. . . .

"26. On February 19, 2020, the next afternoon, the prosecutor emailed a plea offer to Respondent on the felony Johnson County case, 19 CR 1810. The plea offer included Client G.O. entering a plea to two counts of Criminal Threat. Later that day, Respondent clarified the offer.

"27. On February 20, 2020, Respondent and the prosecutor exchanged several emails, including:

"a. February 20, 2020, at 8:05 a.m. an email from the prosecutor clarified the possible sentence.

"b. February 20, 2020, at 8:43 a.m. Respondent stated, 'I spoke with him about the deal last night . . . and will go to JOCO after my Lenexa date at 1030am [*sic*] . . . and will contact him from the phone at the courthouse . . . will let you know ASAP.'

6

"28. On February 20, 2020, at 8:19 a.m., the court's administrative assistant emailed the parties and asked whether Client G.O.'s case would be a preliminary hearing that afternoon.

   "a.   Respondent replied at 8:47 a.m., 'I informed (Client G.O.) about the plea offer that has been extended by the State . . . will come to JOCO . . . after my 1030 [*sic*] in Lenexa, and call him from the phones at the courthouse, and get an answer to Judge Cameron and ADA Shannon . . . ASAP . . . .'

   "b.   Respondent replied at 12:10 p.m., 'Scrap the Prlim (sic) . . . we should be able to advance to Plea. I just need to find him as soon as he is transferred from Gardner . . . to go over the details . . . see everyone at 3 pm.'

"29. On February 20, 2020, Respondent spoke to Client G.O. prior to the designated court hearing time. During this conversation, Client G.O. was in custody, escorted by two law enforcement officers, and seated in the jury box waiting for his hearing. G.O. was in handcuffs and ankle shackles. The deputies each were equipped with a body camera and audio.

"30. On February 20, 2020, Respondent can be seen on the body camera video of an officer entering the court room and approaching Client G.O. who is cuffed and seated in the jury box.

   "a.   Respondent placed documents on the jury box railing as he talked to Client G.O. about waiving his preliminary hearing and setting a plea date for a plea to criminal threat a felony. Client G.O. did not understand or want to waive his preliminary hearing and did not want to plead to a felony.

   "b.   After a period of time, Respondent can be heard using expletives in his conversation with Client G.O. and appeared to be frustrated and irritated with Client G.O.

   "c.   Client G.O. can be heard on the video stating in part to Respondent, '. . . you should tell me, you work for me, I don't know . . . .'

7

"d.  Respondent reached over the jury box railing and touched Client G.O. by grabbing his shoulder/arm to pull him closer to speak in an aggressive fashion.

"e.  The interaction between Respondent and his client alarmed officers. One officer immediately intervened physically and moved to stand between Respondent and Client G.O. to provide a physical barrier to protect Client G.O. from Respondent. The officer stated to Respondent, 'No, negative, no, step away from him, no, leave, I've had enough, you've cussed him out, you're not allowed to touch him, go out to the hallway and cool down.'

"f.  This event happened before the judge took the bench.

"31. The officers completed offense reports for the event between Respondent and his client.

"a.  Respondent was interviewed by officers on February 26, 2020.

"b.  Respondent told the officer during the telephone interview that he was trying to pull his client forward to discuss sensitive information.

"c.  Respondent stated during the interview that he was trying to sell his client's house and car.

"d.  The officer advised Respondent an offense report charging him with battery would be sent to the District Attorney's office. Respondent said, 'If you think that I battered my client, then I am guilty of battery.' The officer indicated the report would be submitted to the District Attorney's Office for their consideration of whether charges should be filed. As of this date, no criminal charges have been filed against Respondent.

8

"32. Client G.O. was interviewed by S.I. Terry Morgan. During this interview he told S.I. Terry Morgan that as he talked to Respondent in the jury box, G.O. told Respondent that he worked for him (Client G.O.). Respondent became angry, cursed, and grabbed Client G.O.'s shoulder.

"33. Another inmate was sitting in the jury box and observed the conversation between Respondent and Client G.O. Inmate T.R. was interviewed by S.I. Terry Morgan.

"34. Inmate T.R. said he heard portions of the conversation and observed Respondent's conduct. Inmate T.R. heard Client G.O. say 'You work for me; I don't work for you.'; then he heard Respondent say, 'Fuck this' and reached out and grabbed Client G.O.

"35. The judge called Client G.O.'s criminal case and noted the Court understood that Client G.O. was waiving his preliminary hearing. Respondent told the Court that Client G.O. did not wish to waive; and because the State had called off their witnesses on Respondent's representation that G.O. wanted to waive his right to a preliminary hearing, the matter was continued. The Court noted that an hour had been set aside for a preliminary hearing.

"36. Immediately after the hearing, Deputies who observed Respondent's conduct with Client G.O. advised the judge about the events that happened in the court room. The Court recalled Client G.O.'s case, removed Respondent as counsel and appointed the public defender.

"37. Respondent was interviewed by an investigator for the ODA.

"38. Respondent asserted during his interview that he did explain Constitutional rights, the effects of waiver of preliminary hearing, and consequences of pleas to Client G.O.; however, Respondent does not have any contemporaneous notes in his file reflecting these communications.

"39. Client G.O. had asked Respondent to sell four fur coats to try to raise money to help him post his bond. Respondent was not able to sell the fur coats for Client G.O. and did return to G.O. the four fur coats, a brief case and paperwork that constituted all of the property G.O. placed in his possession.

"Conclusions of Law:  Petitioner and Respondent stipulate and agree that Respondent violated the following Supreme Court Rules and Kansas Rules of Professional Conduct. Respondent engaged in misconduct as follows:

"40. KRPC 1.2 (Scope)—Respondent failed to clearly define his scope of representation particularly with what his obligations were with the Power of Attorney G.O. granted him. Respondent contacted the police department to advise them that a previous Power of Attorney G.O. had granted to R.W. had been revoked, but Respondent did not communicate that to R.W. G.O. believed Respondent was retained to convey the Revocation of the POA to R.W. and expected Respondent to do that. There was no written agreement clarifying Respondent's Scope of Representation.

"41. KRPC 1.3 (Diligence)—Respondent failed to make adequate efforts to convey his client G.O.'s revocation of the Power of Attorney to R.W. Respondent did not serve or attempt to serve R.W. with the Revocation despite having his address. After advising Client G.O. to give POA to Respondent, Respondent did not take adequate steps to protect his client's assets. Respondent was aware Client G.O. was unsophisticated and did not document his communication to his client on important rights, or explain issues related to granting POA to Respondent.

"42. KRPC 8.4(d) (Conduct prejudicial to the administration of justice)—By engaging in unprofessional interaction with client in the jury box prior to a hearing including use of profanity and aggressive physical contact, Respondent caused the Court to remove him from the case and appoint another lawyer. Respondent's actions necessitated unduly delaying the proceedings further and delayed the resolution for the client who was in custody at the time.

"43. KRPC 8.4(g) (Conduct that adversely reflects on the lawyer's fitness to practice law)—By engaging in unprofessional interaction with client in the jury box prior to

10

a hearing including use of profanity and aggressive physical contact, Respondent caused law enforcement officers to intercede, and his conduct was observed by another inmate.

"Applicable Aggravating and Mitigating Circumstances:

"44. Aggravating circumstances include:

"a. Prior disciplinary offenses, including:

"i. DA 8,718: 2003 Informal Admonition for violation of Rule 8.4 (Misconduct). Respondent was administratively suspended for failure to pay his registration fee. During that time, he entered pleas on behalf of two (2) clients. Both pleas had to be set aside when the judges realized that Respondent was suspended.

"ii. DA 9,894: 2008 Diversion for violation of Rule 1.1 (Competence). Respondent's client was charged with three (3) counts of aggravated robbery and was convicted on all three (3) counts. Respondent filed a motion for a new trial based on his ineffective assistance of counsel; noting that he failed to object to jury instructions, was not prepared for trial, was deficient in not filing pretrial motions.

"iii. DA 13,272: 2019 Informal Admonition for violation of Rule 1.7(a)(2) (Conflict, current client) and 1.8(b) (Conflict, special rules). Respondent represented a mother in a criminal case where she was charged with one felony and two misdemeanors. Respondent's client struggled with substance abuse issues. Subsequently, Respondent filed a petition for Third Party Custody of his client's child; Respondent was seeking custody of his client's child because Respondent had a long-term relationship with the child. Respondent cited to his client's substance abuse struggles as part of the grounds for intervention.

11

"b.  A pattern of misconduct—Respondent has previously been disciplined for his conduct in criminal cases. In this case, Respondent's lack of diligence created misunderstandings by his client and culminated in Respondent's aggressive physical and verbal conduct in the jury box.

"c.  Multiple offenses—Respondent violated KRPC 1.2, 1.3, 8.4(d) and 8.4(g).

"d.  Vulnerability of victim:  Client G.O. was incarcerated and unsophisticated. Client G.O. trusted Respondent to effectuate revoking the POA for acquaintance R.W. Respondent's limited efforts of attempting to call R.W. and failure to make attempts to serve R.W. or attached a notice his POA had been revoked extended R.W.'s ability to take advantage of Client G.O. Client G.O. followed Respondent's advice and gave Respondent general POA to protect his assets while incarcerated but Respondent did not take steps to protect Client G.O.'s assets while he was incarcerated.

"e.  Substantial experience in the practice of law—Respondent was admitted to practice law in Kansas in 2000 and has substantial experience in the practice of law.

"45.  Mitigating circumstances include:

"a.  Absence of a dishonest or selfish motive—Respondent's actions appear to have been motivated from a genuine desire to help a client who was in custody and unable to help himself at the time Respondent's estimated fees were modest. He performed legal work prior to receiving any payment. Ultimately, when Respondent was removed from the felony case, he did not submit an invoice to Client G.O. for legal services or request payment for any of his time. Respondent did not exhibit any dishonesty during the violations or the subsequent investigation.

"b.  Cooperation during the investigation and full and free acknowledgement of the transgressions. Respondent submitted to interviews and provided information in a timely manner whenever requested.

12

"c.    Good character and reputation in the community. Respondent submitted character letters from attorneys and other clients attesting to his character.

"d.    Remorse. Respondent exhibited genuine remorse for his conduct before and during the investigation. Respondent wrote a letter of apology to the judge in G.O.'s case and completed that.

. . . .

"Recommendations for Discipline:

"48.    Petitioner and Respondent jointly recommend Respondent be suspended from the practice of law in the State of Kansas for one year; that the imposition of this suspension from the practice of law be stayed and Respondent be placed on probation according to the terms in Respondent's Exhibit C for a period of eighteen months (18) months or as directed by the Supreme Court.

"49.    Respondent waives his right to a hearing on the formal complaint as provided in Supreme Court Rule 222(c).

"50.    Petitioner and Respondent agree that no exceptions to the findings of fact and conclusions of law will be taken.

"51.    The complainant in this matter is Judge Cameron. Notice of the Summary Submission will be provided to the complainant and given 21 days to provide the disciplinary administrator with their position regarding the agreement as provided in Supreme Court Rule 223(d).

"52.    Respondent understands and agrees that pursuant to Supreme Court Rule 223(f), this Summary Submission Agreement is advisory only and does not prevent the Supreme Court from making its own conclusions regarding rule violations or imposing discipline greater or lesser than the parties' recommendation.

13

"53. Respondent also understands and agrees that after entering into this Summary Submission Agreement he will be required to appear before the Kansas Supreme Court for oral argument under Supreme Court Rule 228(i)."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, the appropriate discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Kansas Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281) (a misconduct finding must be established by clear and convincing evidence). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009).

The Disciplinary Administrator provided Whinery with adequate notice of the formal complaint. The Disciplinary Administrator also provided Whinery with adequate notice of the hearing before the panel. The parties agreed to waive the hearing on the formal complaint, and Whinery made a statement that if the summary submission was approved, the parties will not take exceptions to the findings of fact or conclusions of law. Under Rule 223(b), a summary submission agreement is:

"[a]n agreement between the disciplinary administrator and the respondent to proceed by summary submission must be in writing and contain the following:

"(1) an admission that the respondent engaged in the misconduct;

"(2) a stipulation as to the following:

14

(A) the contents of the record;

(B) findings of fact;

(C) and conclusions of law, including each violation of the Kansas Rules of Professional Conduct, the Rules Relating to Discipline of Attorneys, or the attorney's oath of office; and

(D) any applicable aggravating and mitigating factors.

"(3)  a recommendation for discipline;

"(4)  a waiver of the hearing on the formal complaint; and

"(5)  a statement by the parties that no exceptions to the findings of fact or conclusions of law will be taken." Rule 223(b) (2022 Kan. S. Ct. R. at 278).

The Kansas Board for Discipline of Attorneys approved the summary submission and canceled a hearing under Rule 223(e)(2). As a result, the factual findings in the summary submission are admitted. See Kansas Supreme Court Rule 228(g)(1) (2022 Kan. S. Ct. R. at 288) ("If the respondent files a statement . . . that the respondent will not file an exception . . . , the findings of fact and conclusions of law in the final hearing report will be deemed admitted by the respondent.").

When signed by the parties, the written summary submission agreement contained all the information required by Rule 223. The summary submission and the parties' stipulations before us establish by clear and convincing evidence the charged conduct violated KRPC 1.2, 1.3, 8.4(d), and 8.4(g). We adopt the findings and conclusions set forth by the parties in the summary submission and at oral argument. A minority of the court, after reviewing the body camera footage, would find that the undisputed evidence does not establish a violation of KRPC 8.4(d) and 8.4(g).

15

The remaining issue is deciding the appropriate discipline. The parties jointly recommend that Whinery be suspended from the practice of law in the state of Kansas for one year and that the imposition of this suspension be stayed and Whinery be placed on probation according to the terms of "Respondent's Exhibit C" for a period of 18 months. We adopt and impose the jointly recommended discipline. A minority of the court would impose a lesser discipline.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that David S. Whinery is, effective the date of this opinion, suspended from the practice of law in the state of Kansas for one year; and that this suspension is stayed and Whinery is on probation according to the terms of "Respondent's Exhibit C" for a period of 18 months for violations of KRPC 1.2, 1.3, 8.4(d), and 8.4(g).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.